UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELCORP, INC. d/b/a GREAT STEAK & POTATO COMPANY, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY and WEST AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Court No.<br><br>*JURY TRIAL DEMANDED* |

## COMPLAINT AT LAW

Plaintiff, MELCORP, INC., doing business as "GREAT STEAK & POTATO COMPANY," by and through its attorneys, DUNCAN LAW GROUP, LLC and ESBROOK LAW, LLC, complaining of the Defendants, LIBERTY MUTUAL INSURANCE COMPANY (hereinafter "Liberty Mutual") and WEST AMERICAN INSURANCE COMPANY, for its Complaint at Law, pleading in the alternative, on behalf of itself and all others similarly situated, states:

### Nature of the Action

1. This action arises out of Defendants' failure to provide insurance coverage for the business income Plaintiff lost because of the ongoing Coronavirus (COVID-19) pandemic.

2. Plaintiff brings this action for declaratory relief and breach of contract on behalf of itself and all other similarly situated Illinois businesses.

### The Parties

3. Plaintiff, Melcorp., Inc., doing business as "Great Steak & Potato Company," is an Illinois corporation with its principal place of business at 140 Fox Valley Center Road, Space

BTQ7, Aurora, Illinois 60504.

4. At all times mentioned herein, Plaintiff, Melcorp., Inc., owned and operated Great Steak & Potato Company, a restaurant in the Fox Valley Mall (formerly Westfield Fox Valley) food court, located at 140 Fox Valley Center Road, Space BTQ7, Aurora, Illinois 60504.

5. At all times mentioned herein, the Fox Valley Mall was an indoor shopping mall containing various non-essential retailers, a food court, one or more children's play areas, and one or more amusement arcades, among other things.

6. At all times mentioned herein, the Fox Valley Mall food court contained various food stalls and a common dining area for customers wishing to dine in the mall.

7. Defendant, Liberty Mutual, is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

8. At all times mentioned herein, Defendant, Liberty Mutual, was licensed to do business in the State of Illinois, selling commercial property and casualty insurance policies to Illinois businesses.

9. Defendant, West American Insurance Company, is an insurance corporation organized under the laws of the State of Indiana, with its principal place of business in Indianapolis, Indiana.

10. At all times mentioned herein, Defendant, West American Insurance Company, was licensed to do business in the State of Illinois, selling commercial property and casualty insurance policies to Illinois businesses.

**Jurisdiction and Venue**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is

a citizen of a different state than Defendants; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

12. This Court has personal jurisdiction over Liberty Mutual pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts Liberty Mutual made to insure property and/or risk in Illinois, (2) business that Liberty Mutual transacted within Illinois, and (3) one or more contracts and/or promises Liberty Mutual made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

13. This Court has personal jurisdiction over West American Insurance Company pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts West American Insurance Company made to insure property and/or risk in Illinois, (2) business that West American Insurance Company transacted within Illinois, and (3) one or more contracts and/or promises West American Insurance Company made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

14. Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

15. Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois and Defendants "reside" in the Northern District of Illinois. 28 U.S.C. § 1391.

## Factual Allegations

*Coronavirus (COVID-19) and Illinois's Response*

16. For years, if not decades, the Center for Disease Control and the World Health Organization have been warning about the possibility of an airborne virus that could cause a

worldwide pandemic.

17. On December 31, 2019, Chinese health authorities notified the World Health Organization about a cluster of pneumonia of unknown etiology in Wuhan, China. Christian L. Althaus and Julien Riou, *Pattern of early human-to-human transmission of Wuhan 2019 novel coronavirus (2019-nCoV), December 2019 to January 2020*, Eurosurveillance (Jan. 30, 2020), https://www.eurosurveillance.org/content/10.2807/1560-7917.ES.2020.25.4.2000058. A few days later, the same authorities identified a novel Coronavirus ("COVID-19") as the cause of the outbreak. *Id.*

18. Since its discovery, COVID-19—a highly contagious airborne virus—has spread rapidly around the globe, first appearing in the United States and Illinois in January 2020.

19. Since its arrival, COVID-19 has infected more than 4,649,102 people in the United States and more than 181,943 in the State of Illinois. Cases of Coronavirus Disease (COVID-19) in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited August 4, 2020).

20. Although a lot remains unknown about the manner in which COVID-19 spreads, COVID-19 is thought to spread mainly from person to person through respiratory droplets produced when an infected person coughs, sneezes, or talks. Frequently Asked Questions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread (last visited June 30, 2020). These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. *Id.* Spread is more likely when people are in close contact with one another (within about 6 feet). *Id.*

21. When an infected person coughs, sneezes, or talks, the aforementioned respiratory droplets can also land on objects and surfaces around the person such as tables, doorknobs and

handrails. Q&A on coronaviruses, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited June 30, 2020). People can become infected by touching these objects or surfaces, then touching their eyes, nose or mouth. *Id.*

22. COVID-19 has been declared a pandemic by the World Health Organization.

23. The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize bars and restaurants.

24. In response to this pandemic, Federal and State authorities have mandated social distancing and limited the number of people that can gather in any setting.

25. On March 16, 2020, in direct response to the COVID-19 outbreak, and pursuant to the Illinois Emergency Management Agency Act, 20 ILCS 3305/1, *et seq.*, Illinois Governor J.B. Pritzker issued Executive Order 2020-07, ordering "all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—[to] suspend service for and … not permit on-premises consumption." Executive Order 2020-07 (2020). Although Executive Order 2020-07 permitted such businesses to serve food and beverages for off-premises consumption, it mandated that they ensure they have an environment where patrons purchasing food or beverages "maintain adequate social distancing." *Id.* Executive Order 2020-07 also prohibited all public and private gatherings of 50 or more people. *Id.*

26. On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, (1) directing Illinois residents to stay in their homes except when performing "essential" activities, (2) prohibiting gatherings of 10 or more people, (3) requiring "non-essential" businesses to cease operations, and (4) extending Executive Order 2020-07's prohibition of on-premises dining

5

through April 7, 2020. Executive Order 2020-10 (2020).

27. On April 1, 2020, Governor Pritzker issued Executive Order 2020-18, extending Executive Order 2020-10 (in its entirety) and Executive Order 2020-07's prohibition of on-premises dining through April 30, 2020. Executive Order 2020-18 (2020).

28. On April 30, 2020, Governor Pritzker issued Executive Order 2020-32, (1) ordering all "non-essential" businesses to cease operations, (2) prohibiting all public and private gatherings of any number of people occurring outside a single household or living unit, and (3) ordering "all places of public amusement … including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs" to remain "closed to the public." Executive Order 2020-32 (2020).

29. On April 30, 2020, Governor Pritzker also issued Executive Order 2020-33, further extending Executive Order 2020-07's prohibition of on-premises dining through May 29, 2020. Executive Order 2020-33 (2020).

30. Executive Orders 2020-07, 2020-10, 2020-18, 2020-32, and 2020-33 (collectively the "Closure Orders") are not laws or ordinances.

31. Since March 16, 2020, countless Illinois businesses (including but not limited to bar and restaurant operators) have made claims under their property and casualty insurance policies for the business income they lost as a result of one or more Closure Orders.

32. Insurers, including Liberty Mutual and West American Insurance Company, have denied nearly every claim for lost business income—taking the outrageous position that their insureds have not suffered "direct physical loss of or damage to" covered property, which insurers

like Liberty Mutual and West American Insurance Company claim is a prerequisite for coverage.

*Plaintiff's All-Risk Insurance Policy*

33. In 2019, Defendants sold Plaintiff a commercial property and casualty insurance policy—Policy Number BKW (20) 57 69 75 02—with an effective date of coverage of April 1, 2019. A copy of Policy Number BKW (20) 57 69 75 02 is attached as "Exhibit A." Plaintiff renewed Policy Number BKW (20) 57 69 75 02 on or before April 1, 2020.

34. At all times mentioned herein, Policy Number BKW (20) 57 69 75 02 covered the restaurant/premises identified in Paragraph 4, above. Exhibit A at 52, 56.

35. Plaintiff has performed all of its obligations under Policy Number BKW (20) 57 69 75 02, including but not limited to the payment of premiums and the timely reporting of claims. Therefore, Policy Number BKW (20) 57 69 75 02 has been in effect since April 1, 2019.

36. Policy Number BKW (20) 57 69 75 02 includes "Business Income" coverage and consists of various policy forms, including but not limited to form number "CP 00 10 10 12" (called the "Building and Personal Property Coverage Form"), form number CP 10 30 10 12 (called the "Causes of Loss – Special Form"), and form number CP 88 10 02 15 (called the "Property Extension Plus"). *Id.* at 53, 148.

37. Pursuant to the Building and Personal Property Coverage Form—an "all-risk" property insurance policy—Defendants agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at 101.

38. "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 103, 124.

39. Neither the Building and Personal Property Coverage Form nor Policy Number BKW (20) 57 69 75 02 contain any additional definition of "Covered Causes of Loss."

40. Neither the Building and Personal Property Coverage Form nor Policy Number BKW (20) 57 69 75 02 define "direct physical loss."

41. Pursuant to the Property Extension Plus coverage form (which modifies the Building and Personal Property Coverage Form), Defendants agreed to:

> pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to your covered Building or Business Personal Property at locations which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to Business Personal Property in the open or in a vehicle, the described locations include the area within 1,000 feet of such locations.
>
> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your location means:
>
> >   **(a)** The portion of the building which you rent, lease or occupy;
> >   **(b)** The area within 1,000 feet of the building, or within 1,000 feet of the location described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle)
> >   **(c)** Any area within the building or at the described location, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

*Id.* at 148-49.

42. According to the Property Extension Plus coverage form:

> "Operations" means the type of your business activities occurring at the described locations.
>
> …
>
> "Period of Restoration" means the period of time that:
>
> **(a)** Begins:
>
> > **(i)** 72 hours after the time of direct physical loss or damage

8

> > for Business Income Coverage; or
>
> > **(ii)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;
>
> > caused by or resulting from a Covered Cause of Loss at the described locations; and
>
> **(b)** Ends on the earlier of:
>
> > **(i)** The date when the property at the described locations should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> > **(ii)** The date when business is resumed at a new permanent location.
>
> …
>
> "Suspension" means:
>
> > **a.** The slowdown or cessation of your business activities; or
>
> > **b.** That a part or all of the described location is rendered untenantable.

*Id.* at 151-52.

43. On March 17, 2020, the Fox Valley Mall notified its tenants that it would temporarily close the mall from March 19, 2020 through March 31, 2020 "[i]n response to [then-current] federal and local guidelines with respect to COVID-19 developments."

44. On or about March 19, 2020, pursuant to the Fox Valley Mall's closure, Plaintiff suspended all restaurant operations and began suffering an ongoing loss of business income.

45. The Fox Valley Mall complied with Executive Orders 2020-10, 2020-18 and 2020-32, and remained closed after March 31, 2020.

46. On or about April 17, 2020, Plaintiff filed a claim with Defendants related to its lost business income.

47. On or about April 27, 2020, Defendants denied coverage for the lost income

9

Plaintiff suffered because of the Closure Orders.

## Class Allegations

48. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of itself and the following Class:

> All Illinois businesses that: (1) are covered under Liberty Mutual and/or West American Insurance Company insurance policies containing policy form number "CP 88 10 02 15" and/or "Business Income" coverage identical to that contained in form number "CP 88 10 02 15;" (2) have made a claim for lost "Business Income" as a result of one or more Closure Orders; and (3) been denied coverage.

49. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the State of Illinois. While only Defendants know the exact number of Class members, Plaintiff believes there are hundreds and likely thousands of members in the Class.

50. Plaintiff's claims are typical of the claims of the other members of the Class it seeks to represent because Plaintiff and all Class members purchased coverage from Defendants containing identical language regarding lost business income.

51. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

52. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions

of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

54. The interest of the members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

### COUNT I – Declaratory Judgment

55. Plaintiff repeats and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiff brings this count on behalf of the Class and pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.

57. Because Defendants have denied Plaintiff's claim for lost business income under Policy Number BKW (20) 57 69 75 02, there is an actual controversy between Plaintiff and Defendants.

58. As a result of one or more Closure Orders, Plaintiff suffered the "direct physical loss of" the restaurant/premises identified in Paragraph 4, above.

59. Plaintiff seeks a declaration by this Court that:

    (a)    It suffered the "direct physical loss of … [its'] covered Building or Business Personal Property at locations which are described in [Policy Number BKW (20) 57 69 75 02's] Declarations" as a result of one or more Closure Orders;

(b) The "loss of" property caused Plaintiff to "suspen[d]" its "operations;"

(c) The "suspension of operations" caused Plaintiff's lost "Business Income;" and

(d) The Closure Orders are "Covered Causes of Loss" under the Building and Personal Property Coverage Form.

60. Plaintiff seeks an additional declaration that it is entitled to "Business Income" coverage under Policy Number BKW (20) 57 69 75 02.

61. A declaratory judgment regarding Defendants' obligation to reimburse Plaintiff for the income it lost as a result of one or more Closure Orders will terminate the controversy and clarify the respective rights and obligations of the parties under Policy Number BKW (20) 57 69 75 02.

## COUNT II – Breach of Contract ("Business Income" coverage)

62. Plaintiff repeats and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

63. Plaintiff brings this count on behalf of the Class.

64. By purchasing Policy Number BKW (20) 57 69 75 02, Plaintiff entered into a contract with Defendants.

65. Under Policy Number BKW (20) 57 69 75 02's terms, Defendants agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at 101.

66. Defendants further agreed to "pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations,'" as long as: (1) the "suspension" is "caused by direct physical loss of or damage to your covered Building or Business Personal

Property at the locations which are described in the Declarations;" and (2) "[t]he loss or damage … [is] caused by or result[s] from a Covered Cause of Loss." *Id.* at 148.

67. As a result of one or more Closure Orders, Plaintiff suffered the "direct physical loss of" the restaurant/premises identified in Paragraph 4, above.

68. The "direct physical loss of" the restaurant/premises identified in Paragraph 4, above, caused Plaintiff to "suspen[d]" its "operations."

69. The "suspension of operations" caused Plaintiff to lose "Business Income."

70. The Closure Orders are "Covered Causes of Loss" under the Building and Personal Property Coverage Form.

71. Pursuant to the terms and conditions of Policy Number BKW (20) 57 69 75 02's "Business Income" coverage, Plaintiff made a claim for the income it lost as result of one or more Closure Orders.

72. Defendants denied Plaintiff's "Business Income" claim.

73. By denying Plaintiff's claim, Defendants breached their contract with Plaintiff.

74. As a result of Defendants denying Plaintiff's claim, Plaintiff has been prevented from recovering lost income pursuant to the terms and conditions of Policy Number BKW (20) 57 69 75 02, thereby suffering damages.

**Request for Relief**

WHEREFORE, Plaintiff, MELCORP, INC., doing business as "GREAT STEAK & POTATO COMPANY," demands the following relief on behalf of itself and all others similarly situated:

A. That an Order be entered certifying this action as a Plaintiff Class action under Federal Rule of Civil Procedure 23;

B. A declaration by this Court that Plaintiff suffered the "direct physical loss of" the restaurant/premises identified in Paragraph 4, above, as a result of one or more Closure Orders;

C. A declaration by this Court that the property "loss" caused Plaintiff to "suspen[d]" its "operations;"

D. A declaration by this Court that the "suspension of operations" caused Plaintiff's lost "Business Income;"

E. A declaration by this Court that the Closure Orders are "Covered Causes of Loss" under the Building and Personal Property Coverage Form;

F. A declaration by this Court that Plaintiff is entitled to "Business Income" coverage under Policy Number BKW (20) 57 69 75 02;

G. Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

H. Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

I. Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

J. An appropriate claims resolution facility, funded by Defendants, to administer relief to the Class in this case;

K. Costs of litigation and attorneys' fees; and

L. All other appropriate relief.

Dated: August 18, 2020									Respectfully submitted,

**DUNCAN LAW GROUP, LLC,**

By:	/s/ Robert R. Duncan
	Attorney for Plaintiff

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #6321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
Email: rrd@duncanlawgroup.com
	jp@duncanlawgroup.com

**ESBROOK LAW, LLC,**

By:	/s/ Christopher J. Esbrook
	Attorney for Plaintiff

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
Email: christopher.esbrook@esbrooklaw.com
	michael.kozlowski@esbrooklaw.com