UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELCORP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 4839 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WEST AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Melcorp, Inc. alleges in this diversity suit that West American Insurance Company, its insurer, wrongfully denied coverage for losses it suffered due to government-ordered shutdowns arising from the COVID-19 pandemic. Doc. 1. (Liberty Mutual Insurance Company, also named as a defendant, *id*. at ¶¶ 7-8, 32, was dismissed voluntarily, Docs. 17, 20.) West American moves for judgment on the pleadings under Civil Rule 12(c). Doc. 18. The motion is granted, and judgment will be entered in West American's favor.

**Background**

As with a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Melcorp's opposition papers, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The court must also consider "the answer … and any

1

written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to Melcorp, the nonmovant, as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017); *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Melcorp operates Great Steak & Potato Company, a restaurant in Fox Valley Mall in Aurora, Illinois. Doc. 1 at ¶¶ 3-4. In March and April 2020, near the outset of the COVID-19 pandemic, the Governor of Illinois issued a series of orders prohibiting on-premises dining and ordering the closure of all nonessential businesses. *Id*. at ¶¶ 25-29. In compliance with the orders, Fox Valley Mall closed temporarily, and Great Steak & Potato Company suspended all operations. *Id*. at ¶¶ 43-45. Melcorp sought to recover its lost income under a commercial property insurance policy issued by West American, *id*. at ¶ 46, the pertinent terms of which are set forth below. West American denied coverage. *Id*. at ¶ 47.

## Discussion

The meaning of a written contract "is generally a question of law for the court." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020). The parties agree that the West American policy is governed by Illinois law. Doc. 19 at 7-8; Doc. 23 at 24; Doc. 26 at 8-9.

Under Illinois law, an insurance policy, like any contract, "is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "[The court's] primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999,

1003 (Ill. 2010). "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). "While [the court] will not strain to find an ambiguity where none exists, neither will [it] adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Munoz*, 930 N.E.2d at 1004 (internal quotation marks and citation omitted).

Melcorp's policy states that West American "will pay for direct physical loss of or damage to Covered Property at [Melcorp's] premises … caused by or resulting from any Covered Cause of Loss." Doc. 1-1 at 101. The specific recovery Melcorp seeks—for lost business income—is governed by the policy's "Business Income" provision. Doc. 1 at ¶¶ 55-74. The Business Income provision states in relevant part:

> [West American] will pay for the actual loss of Business Income [Melcorp] sustains due to the necessary "suspension" of [its] "operations" during the "period of restoration." The "suspension" *must be caused by direct physical loss of or damage to [Melcorp's] covered Building or Business Personal Property* at locations which are described [elsewhere in the policy]. The loss or damage must be caused by or result from a Covered Cause of Loss.

Doc. 1-1 at 148 (emphasis added). "Business Income," in turn, is defined as the "[n]et income … that would have been earned or incurred," plus normal operating expenses that continue to accrue. *Id*. at 149.

In arguing that the Business Income provision provides coverage, Melcorp submits that the closure of its business qualifies as a "direct physical loss of" its covered property—though not "damage to" its property—because "direct physical loss" encompasses "the sudden inability to use a 'Building' and/or 'Business Personal Property' that were previously usable." Doc. 23 at

3

16.  West American takes the contrary view, contending that "direct physical loss" requires some sort of change in the physical condition or location of the covered property.  Doc. 19 at 6-13; Doc. 26 at 9-22.  West American's reading is correct.

True enough, the noun "loss," standing alone, can refer to "depriv[ation] of … a possession."  *Loss*, *Oxford English Dictionary* (2d ed. 1989) (def. 2a); *see also Loss*, *Webster's Third New International Dictionary* (1961) (def. 1a) ("the act or fact of losing," "failure to keep possession," "deprivation").  But the noun "loss" in the Business Income provision is modified by the adjective "physical," which in context means "tangible, concrete."  *Physical*, *Oxford English Dictionary* (3d ed. updated Mar. 2006) (def. 6); *see also Physical*, *Black's Law Dictionary* (11th ed. 2019) (def. 2) ("pertaining to real, tangible objects"); *Physical*, *Webster's Third New International Dictionary*, *supra* (def. 2b) ("of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary").  So "physical loss" refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost.

As Melcorp concedes, the complaint does not allege any such deprivation.  Doc. 23 at 27 ("Melcorp does not allege that COVID-19 was ever physically present on any of its insured property or in the Fox Valley Mall.").  Instead, the complaint alleges that Melcorp's loss of use of its property was due to the Governor's closure orders.  Doc. 1 at ¶¶ 43-45.  Those closure orders did not cause a concrete or tangible "loss of" Melcorp's property.  *See* 10A Steven Plitt *et al.*, *Couch on Insurance* § 148:46 (West 3d ed. updated Dec. 2020) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a

4

distinct, demonstrable, physical alteration of the property.") (footnotes omitted). It follows that Melcorp did not suffer the "physical loss" required for coverage under the Business Income provision.

Another strike against Melcorp's position is that its interpretation is difficult to square with the Business Income provision's "period of restoration" language. As noted, the provision covers losses "due to the necessary suspension of [Melcorp's] 'operations' during the 'period of restoration.'" Doc. 1-1 at 148. The policy defines the "period of restoration" to "end[] on the earlier of: (a) [t]he date when the property at the described locations should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) [t]he date when business is resumed at a new permanent location." *Id*. at 151.

If there had been a physical alteration to the condition or location of Melcorp's property—for example, if a fire destroyed the restaurant, or if a thief stole its cooking appliances—one could assess when the "period of restoration" would end, for in those examples there would be something to "repair[], rebuil[d] or replace[]." *Ibid*. The same cannot be said of the mere loss of use of Melcorp's property. Under Melcorp's theory—that the mere loss of use of property at its premises, without any physical alteration to the condition or location of that property, is covered—when would the period of restoration end? That question is unanswerable, for if there has been no physical alteration to the property's condition or location, there would be nothing to "repair[], rebuil[d] or replace[]." *Ibid*. Nor is there any reason to expect that, absent some physical alteration to "property at the [insured's] premises," the business would have to resume at "a new permanent location." *Ibid*. The uneasy fit between the "period of restoration" language, which is critical to application of the Business Income provision, and Melcorp's interpretation of the provision confirms that the correct reading is the one requiring some

5

physical change in the condition or location of property at the insured's premises. *Accord Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *see also*, *e.g.*, *Chief of Staff LLC v. Hiscox Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1208969, at *3 (N.D. Ill. Mar. 31, 2021) (Connecticut law) (rejecting an insured's similar argument for the same reason).

Contesting this point, Melcorp contends that its interpretation of the Business Income provision "fits perfectly with the 'period of restoration' provision's plain language." Doc. 23 at 23. In so doing, Melcorp relies primarily on a definition of the word "restore" as meaning "to put or bring back into existence or use." *Restore*, Merriam-Webster (def. 2), https://www.merriam-webster.com/dictionary/restore. Under that definition, Melcorp argues, it is sensible to imagine that the lost use of property could be "restore[d]" even without there having been any physical alteration thereto. Doc. 23 at 23.

Melcorp's argument might have had some force if the West American policy did not define the term "period of restoration" in the manner it did, for then the term's meaning would have depended primarily on the definition of the word "restoration" standing alone. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 453 (7th Cir. 2012) ("Under Illinois law, undefined terms are generally given their 'plain, ordinary, and popular meaning' as found in dictionary definitions.") (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1215 (Ill. 1992)). But, as noted, the policy defines "period of restoration" to end when "the property at the described locations should be *repaired, rebuilt or replaced* with reasonable speed and similar quality," or "when business is resumed at a new permanent location," whichever is earlier. Doc. 1-1 at 151 (emphasis added). As shown above, the emphasized language requires there to

6

have been a physical alteration to the condition or location of the covered property, and not merely the restoration of the property's use after a period of nonuse.

In sum, Melcorp is not entitled to coverage under the Business Income provision because, even assuming the Governor's closure orders effected a "necessary 'suspension'" of Melcorp's "operations," the suspension was not "caused by direct physical loss of or damage to" covered property. *Id*. at 148.

Melcorp offers several other arguments to support its contrary reading of the provision, but none persuades.

1. Melcorp first invokes dictionary definitions that, in its view, demonstrate that "[a]n average, ordinary, and reasonable person would interpret the meaning of 'direct physical loss of … your covered Building or Business Personal Property' to include the sudden inability to use a 'Building' and/or 'Business Personal Property' that were previously usable." Doc. 23 at 16 (alteration in original); *see Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001) ("If the words of a policy are clear and unambiguous, a court must afford them their plain, ordinary, and popular meaning.") (emphasis and internal quotation marks omitted). In so arguing, Melcorp does not disagree with the definitions of "physical" and "loss" upon which the court has relied. Much like the court, Melcorp cites *Black's Law Dictionary*'s definition of "physical" to mean "[o]f, relating to, or involving the material universe and its phenomena," or "[o]f, relating to, or involving material things; pertaining to real, tangible objects." Doc. 23 at 17-18 (quoting *Physical*, *Black's Law Dictionary*, *supra* (defs. 1, 2)). And it similarly cites *Merriam-Webster*'s definition of "physical" as meaning "having material existence: perceptible especially through the senses and subject to the laws of nature," or "of or relating to material things." *Id*. at 18 (quoting *Physical*, Merriam-Webster (defs. 2a, 2b), https://www.merriam-

webster.com/dictionary/physical).  As for "loss," Melcorp offers the following definitions: "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu[ally] in an unexpected or relatively unpredictable way[;] … [and] [t]he failure to maintain possession of a thing," *ibid*. (quoting *Loss*, *Black's Law Dictionary*, *supra* (defs. 1, 4)), and "the act of losing possession: deprivation" and "decrease in amount, magnitude, or degree," *ibid*. (quoting *Loss*, Merriam-Webster (defs. 2a, 5), https://www.merriam-webster.com/dictionary/loss).

Based on those definitions, Melcorp submits that "[t]he 'loss' of [its] restaurant and 'Business Personal Property' was undoubtedly 'physical'" because it "was unable to utilize the 'lost' property in the real, material world." *Id*. at 18-19.  That argument is unconvincing.  If "physical loss" to property included any "loss" whose effect is felt in the "real, material world," the word "physical"—clearly intended as a limiting adjective of "loss"—would limit nothing at all, as the "real, material world" is the only world in which a "loss" might manifest.  The correct reading of "physical loss," then, is West American's: given the definitions of the phrase's two constituent words, "physical loss" excludes a "loss" that does not result from some physical change in the property's condition or location.

2.  Melcorp next invokes the principle that a contract should not be interpreted to render superfluous any of its terms.  Doc. 23 at 20; *see Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) ("An insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.").  Specifically, Melcorp argues that "to interpret 'loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating the canon of contract interpretation that every word be given a meaning." Doc. 23 at 20.

Melcorp is correct that the phrases "direct physical loss" and "direct physical … damage" should be read so as not to completely overlap and thereby render superfluous one or the other. But as this court explained in *Chief of Staff*, 2021 WL 1208969, at *3, it does not follow that mere loss of *use*—without any tangible alteration to the physical condition or location of the insured's property—falls within the meaning of *either* phrase. Read naturally, the two phrases can be read to exclude loss of use without rendering either superfluous.

To illustrate, consider a thief who attempts to steal a business's desktop computer. If the thief succeeds, the computer is "physical[ly] los[t]" but not necessarily "physical[ly] … damage[d]." If the thief cannot lift the computer and instead takes a hammer to its monitor in frustration, the computer would be "physical[ly] … damage[d]" but not "physical[ly] los[t]." Yet if the thief were only to change the password on the business's system so that its employees could not log in to the computer, there would be neither "physical … damage" nor "physical loss," though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but not the third. *Accord L&J Mattson's Co. v. Cincinnati Ins. Co.*, 2021 WL 1688153, at *6 (N.D. Ill. Apr. 29, 2021) (adopting this hypothetical).

In fact, it is Melcorp's interpretation of "direct physical loss" that would violate the surplusage-avoidance principle by reading the word "physical" out of the Business Income provision. After all, if the mere loss of use were covered, what would be the difference between "direct loss" and "direct *physical* loss"? Melcorp does not say, and the court cannot tell.

3. Melcorp makes two related arguments based on the meaning of "Business Personal Property." As noted, the Business Income provision applies when there is a suspension of operations "caused by direct physical loss of or damage to [Melcorp's] covered Building or Business Personal Property." Doc. 1-1 at 148. The policy defines "Business Personal Property"

to include: "(1) furniture and fixtures; (2) machinery and equipment; (3) 'stock'; (4) all other personal property owned by [Melcorp] and used in [its] business; (5) labor, materials or services furnished or arranged by [Melcorp] on personal property of others; (6) [Melcorp's] use interest as tenant in improvements and betterments[, which means] fixtures, alterations, installations or additions … [Melcorp] (a) made a part of the building or structure [it] occup[ies] but do[es] not own; and (b) … acquired or made at [its] expense but cannot legally remove; [and] (7) leased personal property for which [Melcorp] ha[s] a contractual responsibility to insure, unless otherwise provided for under [a separate policy provision]." *Id*. at 101 (capitalization altered).

From the premise that "labor … or services" (in item (5)) and "use interest[s]" (in item (6)) are intangible property, Melcorp contends that because "[i]t is impossible to see how intangible property … could undergo a 'tangible alteration,'" the Business Income provision must cover loss of use without any physical alteration to the property's condition or location, for otherwise there could never be "direct physical loss of or damage to" that "intangible" property. Doc. 23 at 21. The court takes Melcorp's argument to be, essentially, that West American's reading of the Business Income provision renders superfluous the references in the definition of "Business Personal Property" to "labor," "services," and "use interest[s]," as there is no scenario under that reading in which those forms of property would be covered.

Even if Melcorp's argument were correct, it would not move the needle much in its favor on the question of whether the Business Income provision covers its losses. True enough, superfluity in a contract is best avoided. *See Swiderski Elecs.*, 860 N.E.2d at 314. But it would be Sisyphean to interpret a 177-page insurance policy in a way that each and every word does independent work—especially in cases, like this one, involving boilerplate policies whose terms are not individually negotiated. Perhaps more to the point, even granting the strong preference

10

against superfluity, the court's ultimate task is to interpret the policy as an average reader would. *See Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 583 (Ill. 2005) (emphasizing that the key inquiry in interpreting insurance policies is what "the average person, for whom the policy is written, would reasonably understand"). It strains credulity to think that an average reader would reject the plain, ordinary meaning of "physical loss" because that meaning might render inoperative three terms ("labor," "services," and "use interest") in a lengthy list set forth in a definition elsewhere in the policy. Put differently, no reasonable person would think that the parties to the West American policy intended an unrealistic meaning of "physical loss" and that they chose to signal that intent by including the terms "labor," "services," and "use interest" in the definition of "Business Personal Property."

In any event, Melcorp is wrong to argue that West American's reading of the Business Income provision causes superfluity problems as to "labor," "services," and "use interest." One can imagine a "physical loss" to "labor … or services"—for instance, if the person providing "labor" or "services" suffers an incapacitating physical injury rendering her unable to work. It is also easy to imagine a loss of "labor … or services" that would not be covered—for instance, if the person providing "labor" or "services" quits or retires.

The same holds true for "use interest." As defined by the policy, "use interest" refers to an interest in using *physical items*: "fixtures, alterations, installations or additions." Doc. 1-1 at 101. So, while a "use interest" may be "intangible" in some abstract sense, it is clear how that interest might suffer "physical loss"—for instance, if someone were to steal the pipes (a kind of "fixture") that connect Melcorp's sinks to Fox Valley Mall's water main—or "physical damage"—for instance, if the pipes were punctured by a vandal.

11

Referring to the "period of restoration" language discussed above, Melcorp argues that it is "difficult, if not impossible, to understand how a 'use interest' or 'labor … or services' can be 'repaired, rebuilt or replaced'" under a reading of the Business Income provision that requires a physical alteration to the property's condition or location. Doc. 23 at 16. There is no such difficulty. If Melcorp lost the use of "labor" because its chefs were physically injured in a manner rendering them unable to work, the coverage would extend until that "labor" could be "replaced." Similarly, if the restaurant's water pipes were punctured, the coverage would extend until they were "repaired." But if, say, Melcorp lost the use of those pipes because an employee failed to pay a water bill, there would be no coverage, for there would be nothing to "repair[], rebuil[d] or replace[]." Doc. 1-1 at 151.

4. Melcorp next seeks to draw a distinction between "physical loss *of* property," a phrase appearing in the Business Income provision here, and "physical loss *to* property," a phrase used in policies considered in other COVID-19 insurance cases in which courts have sided with the insurers. Doc. 23 at 24-25. Specifically, Melcorp suggests that those other cases are inapposite, and that they perhaps support Melcorp's position, for they stand for the proposition that when a policy uses the phrase "*to* property," the insurer wins, and when it uses the phrase "*of* property," the insured wins. *Ibid*. That argument is unpersuasive.

As an initial matter, the phrase "physical loss to property" does not appear in Melcorp's policy. So Melcorp cannot rely on the presumption that, if two provisions in the same contract use different language, they carry different meanings. *See United Am. Ins. Co. v. Wilbracht*, 825 F.2d 1196, 1203 (7th Cir. 1987) (presuming that differently worded provisions in an insurance policy carry different meanings). Rather, Melcorp's argument can be only that the court should not be swayed by any otherwise persuasive decisions holding that policies with the phrase

"physical loss to property" do not provide coverage for losses arising from government-issued COVID-19 closure orders. Doc. 23 at 24-25.

True enough, in ordinary speech, "loss of" something is not necessarily the same as "loss to" something. When one refers to the "loss of *X*," she may mean to say that someone or something *used* to have *X*, but no longer does. *See Loss*, Webster's Third New International Dictionary, *supra* (def. 1a) (using as examples "precautions against loss or theft *of* property"; "loss *of* a leg"; "loss *of* sight"; "loss *of* reputation"; "loss *of* caste"; "virtual loss *of* three divisions of infantry") (emphasis added; other emphasis omitted); *ibid.* (def. 1b) (using as examples "bore up bravely under the loss *of* both parents"; "the explosion caused a temporary loss *of* hearing"; "embittered by the loss *of* his wife's affection") (emphasis added; other emphasis omitted). Under that meaning, the person or thing suffering the "loss of *X*" must be inferred from context. By contrast, when one refers to the "loss to *X*," it is *X* that has suffered the loss. *See ibid.* (def. 1c) (using as examples "his retirement was a serious loss *to* the company"; "her death was a loss *to* all who knew her") (emphasis added; other emphasis omitted).

Given this distinction, the phrase "loss of property" in an insurance policy might mean something slightly different than the phrase "loss to property." When an insured suffers a "loss *of* property," the insured had some property that is now lost. When an insured suffers a "loss *to* property," it is the property that sustained the loss—but because that property belongs to the insured, the loss is the insured's all the same. So the choice of preposition, while carrying some metaphysical distinction, it makes no practical difference here because it does not alter the coverage trigger: that there be a "physical loss" affecting "property" belonging to the insured. *See Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231 (C.D. Cal. 2020) ("The Court agrees with Plan Check that sometimes the distinction between prepositions is

important, but finds that this case is not one of them."). That the loss must be "physical" is the principal consideration driving the court's interpretation—not the subtlety of which two-letter word follows "loss" or decisions reached in cases where that word is "to" rather than "of"—and for the reasons given above, Melcorp's loss of use of its premises due to the COVID-19 closure orders does not qualify as a "physical loss."

5. Finally, Melcorp argues that because the Business Income provision is ambiguous, it should be construed in its favor and against West American, the drafter. Doc. 23 at 28-29; *see Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997) ("[I]f the terms of [a] policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy."). Alternatively, Melcorp argues that the provision is at least ambiguous enough to make judgment on the pleadings inappropriate. Doc. 23 at 29. For all the reasons given above, there is no ambiguity in the Business Income provision, so Melcorp's arguments fail.

In so holding, the court acknowledges that several district court decisions have interpreted similar insurance policy provisions to cover, or at least to possibly cover, losses due to government-imposed COVID-19 closure orders. *See, e.g.*, *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, __ F. Supp. 3d __, 2021 WL 767617, at *3-5 (N.D. Ill. Feb. 28, 2021); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, __ F. Supp. 3d __, 2021 WL 679109, at *8-10 (N.D. Ill. Feb. 22, 2021); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800-03 (W.D. Mo. 2020). But disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous. *See Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (rejecting the argument that an insurance policy term was ambiguous "on the basis of conflicting case law" interpreting the

term); *TMW Enters. v. Fed. Ins. Co.*, 619 F.3d 574, 580 (6th Cir. 2010) (Sutton, J.) ("[A] disagreement among three judges about whether a contractual provision is ambiguous does not establish that it is ambiguous … ."); *City of Austin v. Decker Coal Co.*, 701 F.2d 420, 426 n.17 (5th Cir. 1983) ("[T]he fact that courts may disagree as to the import of a contract term does not, by that fact alone, mean that it is ambiguous."); *Cont'l Ins. Co. v. Bones*, 596 N.W.2d 552, 556-58 (Iowa 1999) (holding a policy provision to be unambiguous even though other courts had interpreted similar language differently). Those other decisions therefore do not preclude rejecting Melcorp's interpretation of the West American policy on a Rule 12(c) motion.

In sum, the West American policy's Business Income provision does not apply where, as here, a government closure order prohibits access to a business's premises for reasons unconnected to any change in the physical condition of those premises, or in the physical condition or location of property at those premises. In so holding, this court joins the many other courts to have interpreted materially identical provisions in the same manner. *See*, *e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, __ F.4th __, 2021 WL 2753874, at *2 (8th Cir. July 2, 2021) ("The policy here clearly requires direct 'physical loss' or 'physical damage' to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction."); *Berkseth-Rojas v. Aspen Am. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 101479, at *5 (N.D. Tex. Jan. 12, 2021) ("[D]irect physical loss or damage requires something more than mere loss of use or function."); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1296, (N.D. Ga. 2020) ("[T]he contract language [at] issue here is not ambiguous, and because the Governor's Executive Order did not create a 'direct physical loss of' the Plaintiffs' [premises], the Business Income provision does not apply to the Plaintiffs' claims."), *remanded*

*on other grounds*, 2021 WL 1851381 (11th Cir. Apr. 8, 2021); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1055 (C.D. Cal. 2020) ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a distinct, demonstrable, physical alteration.") (some internal quotation marks omitted), *appeal docketed sub nom. Marks Engine Co. No. 28 Rest., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 20-56031 (9th Cir. Oct. 6, 2020); *see also Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 882-83 (S.D. W. Va. 2020) ("The majority of courts to address the issue … have found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss to insured property.").

\* \* \*

Melcorp claims only that it is entitled to coverage under the West American policy's Business Income provision. Because that provision does not cover Melcorp's COVID-19-related losses, there is no need to resolve the parties' dispute concerning the policy's exclusion of losses caused by viruses. Doc. 19 at 13-15; Doc. 23 at 27-28; Doc. 26 at 23-25.

**Conclusion**

West American's motion for judgment on the pleadings is granted. Melcorp's opposition brief does not request an opportunity to replead in the event West American's motion were to be granted. Accordingly, judgment will be entered in favor of West American and against Melcorp. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing … in any of our cases[] suggests that a district court must give leave to amend a complaint where

16

a party does not request it … . To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … .").

July 8, 2021

_____
United States District Judge